## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

P.K.,[1]

      **Plaintiff,**

v.

**MICHELLE KING,** Acting Commissioner of
Social Security Administration,

      **Defendant.**

Case No. 24-2010-DDC

## <u>MEMORANDUM AND ORDER</u>

Plaintiff P.K. seeks judicial review under 42 U.S.C. § 405(g) of the final decision by the

Commissioner of the Social Security Administration.  The Commissioner denied plaintiff's claim

for Disability Insurance Benefits under Title II of the Social Security Act, as amended.  Plaintiff

asks the court to reverse the Commissioner's decision and remand with directions to award him

benefits.  Doc. 8 at 25.  Alternatively, plaintiff asks the court to remand the matter for corrected

proceedings.  *Id.*  The Commissioner has filed a response brief, asking the court to affirm the

Commissioner's decision.  Doc. 14 at 22.  Finding legal error in the Administrative Law Judge's

(ALJ) evaluation of a medical opinion, the court reverses and remands for further proceedings.

The court begins with the legal standard for social security disability appeals.  It recites, first, the

standard of review and, second, how the ALJ determines disability.

---

[1]      The court makes all of its Memoranda and Orders available online.  Therefore, as part of the court's efforts to preserve the privacy interests of Social Security claimants, it has decided to caption this Order using only plaintiff's initials.

I.      **Legal Standard**

    A.      **Standard of Review**

Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions by the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's denial of benefits is limited to these questions: Whether substantial evidence in the record supports the agency's factual findings and whether the Commissioner applied the correct legal standards. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (identifying same two questions on review); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it must be "more than a mere scintilla[.]" *Noreja*, 952 F.3d at 1178 (citation and internal quotation marks omitted). While courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and internal quotation marks omitted). But they also don't accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When courts decide whether substantial evidence supports the Commissioner's decision, they "examine the record as a whole, including whatever in the record fairly detracts

from the weight of the Commissioner's decision[.]" *Id.* (citation omitted). "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "'appropriate circumstances'"—in other words, applying an improper legal standard does not require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule in *Glass*). Some errors are harmless and require no remand or further consideration. *See, e.g.*, *Mays*, 739 F.3d at 578–79 (explaining ALJ's failure to weigh medical opinion harmless error if no inconsistency between opinion and ALJ's residual functional capacity finding); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012) (finding ALJ's failure to weigh medical opinions properly and expressly was harmless error when "further analysis or weighing" couldn't advance [plaintiff's] claim of disability"); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (holding ALJ's lack of analysis for residual functional capacity determination "troubling" but nonetheless deciding it comports with record evidence).

## B.     Disability Determination

Claimants seeking Disability Insurance Benefits bear the burden to show their disability. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted). In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520, which governs claims for disability insurance benefits).  As summarized by the Tenth Circuit, this familiar five-step process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(a)(4).  The claimant must bear the "burden of proof on the first four steps," but the burden shifts to the Commissioner at step five.  *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003).  The Commissioner must "show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'"  *Id.* (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  This analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

## II.     Factual Background and Procedural History

### A.     The First Unfavorable Decision

Plaintiff applied for disability insurance benefits and supplemental security income

benefits on October 28, 2019.  Doc. 7 at 18 (Tr. 12).  His disability insurance benefits claim was

denied, first, on August 3, 2020, and on reconsideration on June 22, 2021.  *Id.*  The ALJ

conducted a hearing on February 10, 2022.  *Id.*  Following the hearing, the ALJ issued an

unfavorable decision, finding plaintiff nondisabled.  *Id.* at 28 (Tr. 22).  Plaintiff appealed this

decision to the Appeals Council, which declined review on November 4, 2022.  *Id.* at 612 (Tr.

606).  Then, plaintiff appealed to our court.  *Id.* at 618–19 (Tr. 612–13) (Complaint in Case No.

22-2503-EFM).  In that appeal, the Commissioner reviewed the case and moved to reverse and

remand.  *Id.* at 620–21 (Tr. 614–15) (Commissioner's unopposed motion).  Chief United States

District Court Judge Eric F. Melgren granted the motion, directing the Clerk of Court to enter

judgment reversing the Commissioner's decision and remanding to the Commissioner.  *Id.* at

622–23 (Tr. 616–17) (Order and Judgment).  On remand, the ALJ issued another unfavorable

decision—the subject of this appeal.

### B.     The Second Unfavorable Decision

In that second decision, the ALJ determined at step one that plaintiff hasn't engaged in

substantial gainful activity since his alleged onset date.  *Id.* at 533 (Tr. 527).  At step two, the

ALJ found that plaintiff has the following severe impairments:  anxiety, social anxiety disorder,

depression, schizoaffective disorder, and autism spectrum disorder.  *Id.*  But the ALJ then found

claimant's impairments weren't sufficient—at step three—to meet the severity of one of the

listed impairments in 20 C.F.R., pt. 404, subpt. P, app. 1.  *Id.* at 534 (Tr. 528).  Instead, the ALJ

determined plaintiff's residual functional capability (RFC), describing his findings this way:

5

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. He is able to apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine, repetitive tasks; in a work environment free of fast-paced production requirements; involving only simple work-related decisions; and with few, if any, workplace changes. He can tolerate frequent interaction with the public, coworkers, and supervisors.

*Id.* at 536 (Tr. 530). Based on this RFC finding, the ALJ determined, at step four, that plaintiff was unable to perform any past relevant work. *Id.* at 541 (Tr. 535).

But at step five, considering plaintiff's "age, education, [and] work experience," the ALJ concluded plaintiff has the RFC to perform jobs existing in significant numbers in the national economy. *Id.* at 542 (Tr. 536). Specifically, the ALJ found—based on the Vocational Expert's (VE) testimony—that plaintiff was capable of performing the jobs of Laundry Worker, Machine Cleaner, and Cleaner II. *Id.* at 543 (Tr. 537). The ALJ explained that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* So, a "finding of 'not disabled' [was] therefore appropriate[.]" *Id.*

### C.    Medical Opinions Consulted by the ALJ

An ALJ's five-step evaluation includes consulting medical opinions. This Order turns on opinions from a psychological consultant, Dr. Sen. Dr. Sen issued two opinions—one evaluating plaintiff's mental state on the date last insured (June 30, 2020) and another evaluating claimant's mental state on the date of his evaluation (March 22, 2021). Doc. 7 at 155–63 (Tr. 149–57). The ALJ deemed the latter evaluation—Dr. Sen's "current" mental functioning evaluation[2]—entirely unpersuasive. *Id.* at 539–40 (Tr. 533–34). This unpersuasive determination affected the ALJ's

---

[2]    Plaintiff refers to this latter opinion as Dr. Sen's "post-date last insured" opinion. Doc. 8 at 20. To avoid using the mouthful throughout this Order, the court refers to the opinion as Dr. Sen's "current" opinion. "Current" refers to the date of evaluation (March 2021) and mirrors the description in the record.

conclusion at step five—that plaintiff's has the RFC to perform jobs existing in sufficient numbers in the national economy.

Next, it's helpful to describe a few aspects of Dr. Sen's opinion. Part II.D, following, sets the stage for the court's analysis of the errors asserted here.

### D. Relevant Sections of Dr. Sen's Opinion

Medical opinions like the ones issued by Dr. Sen consist of specified sections. And those sections matter at different stages of the ALJ's five-step evaluation process. Relevant here, Dr. Sen's opinion includes: (1) a Medically Determinable Impairments and Severity evaluation, including a discussion of plaintiff's limitations in four Paragraph B Criteria; and (2) a RFC evaluation, including worksheet findings and a narrative RFC assessment.

### 1. Paragraph B Criteria

"The phrase 'paragraph B' refers to the functional criteria used to assess mental disorders in paragraph B of each listing for mental disorders set forth under Listing 12.00 of Title 20 of the Code of Federal Regulations, Part 404, Subpart B, Appendix 1." *C.P. v. Saul*, No. 19-1256-JWB, 2020 WL 6544582, at *2 n.2 (D. Kan. Nov. 6, 2020). Paragraph B provides four functional criteria, representing "the areas of mental functioning a person uses in a work setting." 20 C.F.R. § 404, subpt. B, app. 1. The four criteria are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The ALJ uses this paragraph B criteria to "'rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (quoting SSR 96-8p). Findings made under paragraph B criteria do not constitute an RFC assessment. *Id.*

## 2.     RFC Evaluation

The RFC evaluation itself is divided into sections, two of which matter in this Order. The Social Security Program Operations Manual (POMS) identifies Section I as "a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation[.]" POMS DI 24510.060 B.2.a. It "does not constitute the RFC assessment." *Id.* (emphasis omitted). Instead, Section I provides checkboxes where the consultant designates limitations in specific areas.[3] The RFC assessment also includes Section III, which is "the actual mental RFC assessment" for "explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* at B.4.a. Section III's hallmark is its narrative format. *Id.* at B.4.b.

Plaintiff identifies a number of purported errors, stemming from the ALJ's RFC findings and his step-five conclusion. The court concludes the ALJ erred in evaluating Dr. Sen's "current" opinion when assessing plaintiff's RFC. So, the court evaluates just that argument. Plaintiff may raise his other arguments to the Commissioner on remand, if he wishes.

## III.     Arguments About Dr. Sen's "Current" Opinion

Plaintiff asserts three errors in the ALJ's determination that Dr. Sen's "current" opinion was unpersuasive. *First*, he argues the ALJ didn't address adequately the persuasiveness of Dr. Sen's "current" opinion because he relied on an inaccurate factual basis. Doc. 8 at 20. *Second*, plaintiff argues the ALJ didn't comply with Social Security Ruling (SSR) 96-8p by failing to explain material inconsistencies between Dr. Sen's two opinions. *Id.* at 21. And, *finally*, he argues that the ALJ failed to explain why he omitted from the RFC Dr. Sen's finding that

---

[3]     A moderate limitation, for example, means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R., pt. 404, subpt. P, app. 1. And "a moderate impairment is not the same as no impairment at all[.]" *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

claimant was moderately limited "in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." *Id.* at 20–21.

The Commissioner responds to plaintiff's arguments with two counterarguments. *First*, the Commissioner explains, the ALJ's persuasiveness finding was based on a different portion of Dr. Sen's evaluation than the one plaintiff identifies. Doc. 14 at 16. *Second*, the Commissioner acknowledges the "confusion" between inconsistent details in Dr. Sen's "current" evaluation but explains that those issues are moot. *Id.*

The court now evaluates these arguments, starting with the law governing evaluation of medical source opinions.

### A.    ALJ Finds Dr. Sen's Opinion Unpersuasive

An ALJ must evaluate medical source opinions and weigh them "based on . . . regulatory factors." *Harrold v. Berryhill*, 714 F. App'x 861, 865 (10th Cir. 2017); 20 C.F.R. § 404.1520c(c) (listing factors of (1) supportability; (2) consistency; (3) relationship with claimant; (4) specialization; and (5) other factors). ALJs must "'provide specific, legitimate reasons'" for discounting or dismissing medical source opinions. *Harrold*, 714 F. App'x at 865 (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)). When no inconsistencies surface between two medical opinions or between a medical opinion and the ALJ's RFC finding, the "'need for express analysis is weakened.'" *Keyes-Zachary*, 695 F.3d at 1161–62 (quoting *Howard*, 379 F.3d at 947). But—when inconsistencies emerge—an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p.

### 1.    Inaccurate Factual Basis

Here, plaintiff argues the ALJ improperly deemed unpersuasive Dr. Sen's "current"

opinion. Doc. 8 at 20. In plaintiff's view, the ALJ rejected Dr. Sen's opinion based on a false premise: that plaintiff's functioning had improved. Doc. 17 at 12. In fact, though, Dr. Sen had identified an additional moderate limitation: plaintiff's ability to perform on schedule, maintain attendance, and exhibit punctuality. *Id.* So, plaintiff argues, substantial evidence doesn't support the ALJ's decision about this opinion's persuasiveness. Doc. 8 at 20–21.

The Commissioner explains plaintiff's supposed "improvement" this way: Dr. Sen found that plaintiff's limitations in two paragraph B criteria had changed from moderate (on the date-last-insured) to mild (in the current evaluation). Doc. 14 at 16; *see* Doc. 7 at 148, 150 (Tr. 142, 144) (showing Dr. Sen report's change from moderate to mild). So, the ALJ assigned no weight to Dr. Sen's "current" opinion because the record didn't support plaintiff's improvement. Doc. 14 at 16. The Commissioner, however, admits an inconsistency in the concentration, persistence, and pace category. Despite noting improvement in that paragraph B category, Dr. Sen added the new moderate limitation on schedule, attendance, and punctuality—a limitation falling within the comparable "concentration and persistence" category in the RFC worksheet. *Id.* ("It does appear that such findings conflict with other findings from Dr. Sen. . . . Thus, there appears to be some confusion in these details."); Doc. 7 at 155–56 (Tr. 149–50) (identifying the four categories of limitations in the worksheet and marking plaintiff's new moderate limitation in schedule, attendance, and punctuality). So, the ALJ's reason for determining unpersuasiveness didn't account for the full scope of Dr. Sen's opinion and thus it rested on a partial factual inaccuracy, as plaintiff argued.

### 2.    Failure to Explain Material Inconsistencies

Recall that an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p. Here, there was an

10

inconsistency in the evidence. Dr. Sen's evaluation reflected improvement in the "B" criteria of the Medically Determinable Impairments and Severity evaluation while simultaneously adding a moderate limitation in Section I's mirror of that criteria. The ALJ rested his analysis on the improvement—as discussed above—but never acknowledged the simultaneous addition of a moderate limitation. As a result, the ALJ didn't explain, resolve, or evaluate this inconsistency when deciding that Dr. Sen's "current" opinion wasn't persuasive. Failing to resolve inconsistencies is legal error. *Luzier v. Astrue*, No. 10-1186-JWL, 2011 WL 2470243, at *6 (D. Kan. June 20, 2011) (concluding ALJ's failure to explain inconsistencies in evidence was "error necessitating remand for a proper narrative discussion as required by SSR 96-8p").

### 3. Omitted from RFC

Related, the ALJ neglected to include this moderate limitation in the RFC—and failed to explain that omission when evaluating Dr. Sen's opinion. The RFC limits plaintiff's capacity to "the performance of simple, routine, repetitive tasks" and an ability "to carry out detailed but uninvolved instructions[.]" Doc. 7 at 536 (Tr. 530). But none of these capacity limitations adequately addresses issues with schedules, attendance, or punctuality—as the court explains more fully in its harmless error analysis, below. *See* § III.B.1.b. More important for present purposes, the ALJ never justified the omission.

These three related issues all lead to a singular problem—the ALJ simply "overlooked" the new moderate limitation, relying instead on just a slice of Dr. Sen's opinion to deem it entirely unpersuasive. Doc. 17 at 13. The ALJ never acknowledged, explained, or justified this selective focus.

Though the Commissioner concedes this unresolved inconsistency, and thus the inaccuracy of the ALJ's persuasiveness finding, she argues it doesn't matter. And while neither

party uses the phrase "harmless error" in their briefs, the court construes the Commissioner's next two arguments under that framework.

### B.    Harmless Error

A failure to address properly and weigh all opinions is subject to a harmless error analysis. *Keyes-Zachary*, 695 F.3d at 1161–63. An "ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity. In that case, the claimant is not prejudiced because giving greater weight to the opinion would not have helped [him]." *Mays*, 739 F.3d at 578–79 (quotation cleaned up). And, where such inconsistencies exist, courts may "supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance[.]" *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Exceptional circumstances occur "where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.*

The Commissioner contends that the only part of the RFC evaluation recognizing the new moderate limitation is Section I, and so it isn't Dr. Sen's "actual opinion [about] what workplace restrictions Plaintiff required." Doc. 14 at 16. Alternatively, the Commissioner argues that the ALJ's RFC finding encompasses the relevant moderate limitation by restricting the demands of work. The court discusses the Commissioner's two arguments, starting with the Commissioner's argument distinguishing Dr. Sen's worksheet findings from his narrative RFC opinion.

### 1.    Section I vs. Section III

The Commissioner appears to argue that there's no inconsistency between the ALJ's RFC and Dr. Sen's opinion because the ALJ didn't need to evaluate separately the new moderate

limitation. She asserts that the new limitation is just a Section I limitation, not the consultant's "actual opinion" from Section III. Doc. 14 at 16 ("However, the issue is moot, as again these moderate limitations are merely in the worksheet portion and do not denote the consultant's actual opinion as to what workplace restrictions Plaintiff required."). What's more, the Commissioner argues, the relevant Section I limitation was included in a Section III limitation that the ALJ rejected. *Id.* at 16–17. So, the legal error in evaluating Dr. Sen's opinion had "no [e]ffect on the ALJ's decision and does not create any cause for remand." *Id.* at 17. To evaluate this argument, the court turns to the Social Security Program Operations Manual (POMS) and relevant Tenth Circuit authority.

### a.    Doctrine

Recall that the POMS provides: "Section I [of a RFC assessment] is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation[.]" POMS DI 24510.060 B.2.a. It's not the official RFC assessment. *Id.* Section III, by contrast, is "the actual mental RFC assessment" for "explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* at B.4.a. Section III is a narrative description. *Id.* at B.4.b.

Our Circuit—referring to the POMS provisions referenced above—has explained that "challenges to whether an ALJ assessment of [RFC] incorporate limitations in section I ask the wrong question." *Fannin v. Comm'r, SSA*, 857 F. App'x 445, 447 (10th Cir. 2021) (quotation cleaned up). Instead, the Circuit "compare[s] the [ALJ's] findings to [the consultant's] opinion on [RFC], not [his] notations of moderate limitations." *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016). In other words, it's the Section III narrative that an ALJ must evaluate to

formulate the RFC finding.  There's a wrinkle, though.  "But this [rule] does not mean that an

ALJ can turn a blind eye to moderate Section I limitations."  *Carver v. Colvin*, 600 F. App'x 616,

619 (10th Cir. 2015).  The consultant's Section III narrative must "describe the effect that each

of the Section I moderate limitations would have on the claimant's ability[.]"  *Id.*  "Where a

psychologist's Section III narrative does not contradict any Section I limitations and describes

the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may

properly look to only the Section III narrative as the psychologist's opinion regarding mental

RFC."  *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015).  So, if the Section I moderate

limitation at issue was encompassed by the Section III narrative, then the ALJ didn't need to

evaluate the limitation separately.  And so, the Commissioner implies, the ALJ's error evaluating

Dr. Sen's "current" opinion was harmless because the ALJ explained his rejection of that Section

III limitation.

b.    **Analysis**

According to the Commissioner, Dr. Sen's Section III narrative accounted for this

Section I limitation "by restricting Plaintiff to two-step commands."  Doc. 14 at 16.  As required,

the Commissioner asserts, the ALJ explained why the record didn't support an RFC limitation to

two-step commands.  *Id.* at 16–17; Doc. 7 at 539 (Tr. 533) (evaluating and rejecting identical

two-step commands limitation in Dr. Watson's opinions).  So, in the Commissioner's view, the

ALJ's decision already accounted for the new moderate limitation, so he properly rejected it.

This argument thus asserts that even setting aside the error resolving the inconsistency in the

record, the ALJ rejected this new limitation and provided a sufficient explanation.  At bottom,

the new limitation wouldn't have changed the ALJ's RFC.

Plaintiff sees the situation differently.  He explains that the Commissioner just "reiterates

her prior arguments" about "moderate limitations and summarily concludes the ALJ articulated

the reasons for rejecting the restriction." Doc. 17 at 12. Plaintiff argues the ALJ "overlooked"

the limitation on schedule, attendance, and punctuality. *Id.* at 13. And earlier in plaintiff's

Reply, he explained why the Commissioner's Section I vs. Section III argument fails.

Specifically, plaintiff asserts that an "ALJ cannot turn a blind eye to moderate Section I

limitations" when the Section III narrative doesn't describe the effect of those limitations. *Id.* at

4 n.2 (quotation cleaned up). Also, plaintiff cited a number of cases reversing and remanding

where the ALJ didn't incorporate certain moderate limitations. *Id.* (first citing *Farmer v. Colvin*,

No. 14-cv-1377-KHV, 2016 WL 4181325, at *6 n.2 (D. Kan. Aug. 8, 2016); then citing *Haga*,

482 F.3d at 1208; and then citing *Gonzales v. Colvin*, No. 15-CV-01333-RBJ, 2016 WL

4091171, at *4 (D. Colo. July 26, 2016)).

Applying the legal principles governing Section I vs. Section III issues, plaintiff has the

better argument: the ALJ would've needed to evaluate the Section I moderate limitation on

schedule, attendance, and punctuality. Take Dr. Sen's Section III narrative. It concluded

plaintiff "retains sufficient mental capacity to carry out two-step commands with adequate

persistence and pace; but he would struggle with detailed or complex instructions." Doc. 7 at

157 (Tr. 151). The Commissioner argues that "two-step commands" encompass a moderate

limitation in maintaining a schedule, attendance, and punctuality. Doc. 14 at 16 ("Dr. Sen

ultimately concluded that all such moderate limitations [included in the concentration and

persistence criteria] were accounted for by restricting Plaintiff to two-step commands."). But it

stretches reason too far to conclude work limited to two-step commands would compensate for

an employee's struggles to show up to work on time—or at all. One can't receive two-step work

instructions if one isn't at work. And the Commissioner doesn't explain how the Section I

moderate limitation connects to the Section III two-step commands limitation.  Dr. Sen's Section III narrative thus doesn't "account for [this] Section I impairment, [and] the ALJ should have addressed the Section I impairment[.]"  *Gonzales*, 2016 WL 4091171, at *4.

The Commissioner's argument that the consultant intended the two-step commands limitation to encompass the schedule, attendance, and punctuality limitation doesn't persuade the court.  Thus, the ALJ would've had to consider the schedule, attendance, and punctuality limitation.  Absent that consideration, there's an inconsistency between the ALJ's RFC and Dr. Sen's "current" opinion that the ALJ's persuasiveness finding doesn't evaluate.  The court can't say, much less "confidently say that *no* reasonable administrative factfinder, following the correct analysis, could have resolved the . . . matter in any other way."  *Allen*, 357 F.3d at 1145 (emphasis added); *Stacey L.C. v. Saul*, No. 20-1064-JWL, 2021 WL 147254, at *4 (D. Kan. Jan. 15, 2021) (applying *Allen* rule to failure to assess medical opinion's persuasiveness).  To do so would require the court to "weigh the opinion [about the new limitation] in the first instance and determine it is unpersuasive[.]"  *Stacey L.C.*, 2021 WL 147254, at *4.  "That is precisely the responsibility of the Commissioner and [her] ALJs, and the court may not intrude into that responsibility."  *Id.*  So, the Commissioner's Section I vs. Section III argument doesn't permit the court to find harmless error.

Next up is the Commissioner's second harmless error argument.  It contends a skill level reduction in the ALJ's RFC finding compensated for the moderate limitation in schedule, attendance, and punctuality.

## 2.     Skill Level Compensating for Moderate Limitations

The Commissioner—in effect—makes one other argument that there's no inconsistency between Dr. Sen's medical opinion and the RFC:  the RFC reduces the demands of work.  Doc.

14 at 17 ("Plaintiff again seems to ignore the fact that a reduction in the demands of work can account for such moderate limitations.  Thus, the issue Plaintiff raises [about] the confusing findings has no [e]ffect on the ALJ's decision and does not create any cause for remand.").  Put simply, the Commissioner argues that the RFC already accounts for the moderate limitation at issue.  So, even if the ALJ had evaluated the limitation separately, the RFC wouldn't change.  This argument seems to reassert an argument the Commissioner made in an earlier portion of her Response.  There, the Commissioner argued that a limitation to unskilled work could account for moderate limitations in concentration, persistence, or pace.  *Id.* at 14 (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)).  Plaintiff responds, contending this situation isn't one of those times.  Doc. 17 at 12–13.

In *Vigil*, our Circuit concluded the "evidence in the record regarding [plaintiff's] mental status supports the ALJ's RFC determination that limiting [plaintiff] to perform unskilled work would adequately account for his moderate limitations in concentration, persistence, and pace." 805 F.3d at 1204.  Some cases, though, don't fit that description.  As the Circuit explained, "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations."  *Id.*  As the Circuit put it, a "vague catch-all" restriction to simple work "is doubtful . . . to capture the various functionally distinct mental limitations recognized by" the consultant.  *Chapo*, 682 F.3d at 1290, 1290 n.3 (reversing and remanding in case where consultant found claimant had limitation in schedule, attendance, and punctuality, among other mental limitations).

The moderate limitation at issue here fits within the concentration and persistence category, like the limitations in *Vigil*.  *See* Doc. 7 at 156 (Tr. 150) ("Rate the individual's sustained concentration and persistence limitations:  . . . The ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances."); *Vigil*, 805 F.3d at 1204 (explaining unskilled work accounted for limitations in concentration, persistence, and pace). But, unlike *Vigil*, a work-demands limitation doesn't capture Dr. Sen's opined limitation on plaintiff's schedule, attendance, and punctuality abilities.

Here, the ALJ didn't limit plaintiff to "unskilled" work, but to "simple, routine, repetitive tasks[.]" Doc. 7 at 536 (Tr. 530); Doc. 17 at 9 ("[T]here are specific limitations . . . which were not addressed or accounted for by the [RFC] limitation to simple, repetitive, routine tasks[.]"). Recall the court's conclusion, above, that a restriction to two-step commands doesn't encompass a reduced ability to come to work or accomplish tasks on schedule. Limiting a plaintiff to simple, repetitive, and routine tasks doesn't cover that limitation either. The Commissioner doesn't explain—at least not in any nonconclusory manner—how limiting plaintiff to simple work tasks could mitigate his limitation in schedule, attendance, and punctuality. *See generally* Doc. 14 at 16–17. "Nor is the relationship between these limitations and the mental restrictions contained in the RFC obvious to this reviewing Court. The restrictions incorporated in [the] RFC have no clear bearing on [plaintiff's] ability to attend work regularly and on time." *Gutierrez v. Kijakazi*, No. 20-552 KK, 2021 WL 4710508, at *6 (D.N.M. Oct. 8, 2021) (quotation cleaned up).

Plaintiff here argues that without the ALJ's error, the disability determination would've changed. "Had the ALJ included any limitation on plaintiff's ability to maintain regular attendance or perform activities within a schedule, [he] would be found disabled." Doc. 8 at 21. Citing to the VE's testimony, plaintiff emphasizes that missing one to two workdays per month would preclude all work. *Id.* (citing Tr. 572). Maybe so. The court won't weigh the evidence, because it can't. *Lax*, 489 F.3d at 1084. It's clear that a reasonable administrative factfinder—if

properly evaluating this additional limitation—"could have resolved the factual matter" in claimant's favor. *Allen*, 357 F.3d at 1145. So, this isn't an "exceptional circumstance" justifying a finding of harmless error. *Id.*

In sum, there's an "inconsistency between the opinion and the ALJ's [RFC] assessment[.]" *Mays*, 739 F.3d at 579. And the Commissioner hasn't offered any other reasons why the error evaluating Dr. Sen's opinion was harmless. *See generally* Doc. 14 at 16–17. So, the court reverses and remands. *See Harrold*, 714 F. App'x at 870, 872 (reversing and remanding after finding possibly harmful legal errors in social security disability appeal).

## IV.    Conclusion

The parties dispute hordes of other potential errors in the ALJ's decision. But this court needed to evaluate just one. For the reasons explained above, the court directs the Clerk to enter judgment in accordance with the fourth sentence of 42 U.S.C. § 405(g) reversing the Commissioner's decision and remanding the case for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

**Dated this 25th day of March, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**